**TEXAS A & M UNIVERSITY SYSTEM, Appellant,**

v.

**UNIVERSITY BOOK STORE, INC., et al., Appellees.**

**No. 10–84–088–CV.**

Court of Appeals of Texas, Waco.

Dec. 31, 1984.

Rehearing Denied Jan. 24, 1985.

Roger C. Clapp, Richards, Harris & Medlock, Dallas, Genevieve Graffeo Stubbs, College Station, Charles Black, Austin, for appellant.

Quinnan H. Hodges, Houston, for appellees.

HALL, Justice.

Texas A & M University is an institution of higher education under the management and control of the Board of Regents of appellant The Texas A & M University System. V.T.C.A., Education Code § 86.02 and § 85.11. Appellant brought this appeal from an order of the trial court cancelling certificates of registration of five service marks issued by the Secretary of State to Texas A & M University. We reverse the judgment ordering cancellation, and we order the suit dismissed under the doctrine of sovereign immunity.

"Service mark" is defined in V.T.C.A., Bus. & C. § 16.01(a)(4)[1] to mean "a word, name, symbol, device, slogan or any combination thereof which, whether registered or not, has been adopted and used by a person to identify his services and distinguish them from the services of others, and includes the titles, designations, character names, and distinctive features of broadcast or other advertising." Section 16.02(b) of the Code provides that "A mark is considered to be used in this state in connection with services when (1) it is used or displayed in this state in connection with selling or advertising the services; and (2) the services are rendered in this State." Section 16.08(a) provides that such mark in actual use in connection with the applicant's services, which distinguishes his services from those of others, is registrable with the Secretary of State unless it falls within certain exceptions designated in the statute.

In 1980, with approval of appellant's Board of Regents, Texas A & M University determined to register with the Secretary of State as the University's service marks certain "emblems," "symbols," "designs," and "logos," as they are variously denominated by the parties throughout the trial, and then, after registration, to enter into a licensing program with manufacturers of consumer goods who place the marks on their products. The licensing agreements would require payment of royalties by the manufacturers to the University for use of the marks. Royalty revenues would be used as financial support for student affairs and activities not funded by the State.

In May and June, 1981, the University applied for and was granted certificates of registration by the Secretary of State of the following seven service marks being used by the University, as set forth in its application, in connection with its services as an "Institution of Higher Education":

Registration No. 38633 for "TEXAS AGGIES."

Registration No. 38634 for a large "T" with an "A" to the left and an "M" to the right ("ATM").

Registration No. 38635 for the four letters "TAMU" in sequence above the words "Texas A & M University."

Registration No. 38636 for the seal of Texas A & M University, a circle including the name Texas A & M University and the year 1876 with the letter T superimposed by a five pointed star surrounded by a wreath.

Registration No. 38720 for the words "Gig 'Em Aggies" imposed upon a hand with closed fingers and an upturned thumb.

Registration No. 38721 for the Texas A & M University "ring crest," an oval with the words "Texas A & M University, 1876" around the edge with a spread eagle and shield at the center, used with or without class year or ATM symbol below the shield.

Registration No. 38722, for design only, for the drawing of a tough looking

---

1.  All further Code references are to V.T.C.A., Bus & C.

army sergeant in campaign hat referred to as "Old Sarge."

The University applied for and received registration of these service marks under the Secretary of State's services class 41, "Education and Entertainment," authorized under Code § 16.09(c)(8).

Immediately after registration, the University began its licensing program with manufacturers, exacting royalties for use of the marks. The products upon which the manufacturers place the marks are infinite in variety and include clothing, caps, tote bags, stationery, bric-a-brac, personal care items, etc.

Appellees are University Book Store, Inc., Loupot's Book Store, Texas Aggie Book Store, Rothers Book Store, and M & M Designs, Inc. With the exception of M & M Designs, appellees operate retail book stores near the University's campus in College Station. A great amount of the store sales of these parties involve products bearing the marks in question. M & M Designs, located in the City of Huntsville, is a manufacturer of decals and transfers and ceramic products bearing the marks.

Code § 16.16(a)(4)(B) provides that the Secretary of State shall cancel "a registration concerning which a district or appellate court has rendered a final judgment, which has become unappealable, cancelling the registration or finding that the registrant ... is not the owner of the mark." Appellees filed this suit in August, 1981, seeking a declaration or finding by the trial court that appellant is not the owner of the service marks in questions (erroneously denominated "trademarks" in appellees' petition), an order cancelling the registrations, and an injunction permanently enjoining the University from licensing and collecting royalties for the use of the marks. Appellees expressly pleaded that they were not seeking money damages.

Appellant's answer included a motion to dismiss under the doctrine of sovereign immunity on the ground that appellant is an agent of the State and that this suit was brought by appellees without legislative consent or statutory authorization.

The case was tried to the court without a jury in October, 1983. At trial, appellees abandoned their suit for cancellation of the registration of the service marks involving the University seal and the design of the ring crest, but they continued in their petition for cancellation of the registrations involving the other marks. On March 7, 1984, judgment was signed by the trial court cancelling Registration Nos. 38720 ("Gig 'Em Aggies"), 38722 ("Old Sarge"), 38633 ("TEXAS AGGIES"), 38634 ("ATM") and 38635 ("TAMU"). This judgment was based upon the trial court's finding that appellant "is not the owner of the described marks" because it has not used the marks, and the conclusion that "the certificates of registration should be cancelled pursuant to Art. 16.16(a)(4)(B), Tex.Bus. & C.Code." No injunctive relief was granted.

Appellant predicates this appeal on two grounds of error asserting (1) the trial court erred in failing to dismiss this suit on appellant's plea of sovereign immunity, and (2) the trial court's finding that appellant does not own the service marks because of lack of use is not supported by any evidence.

■ Although this suit was filed against appellant, it is a suit against the State of Texas, since appellant is an agent of the State. *Walsh v. University of Texas*, 169 S.W.2d 993 (Tex.Civ.App.—El Paso 1942, writ ref'd). Under the rule of sovereign immunity, a suit brought to control State actions or to subject the State to liability is not maintainable without legislative consent or statutory authorization. *Director, Etc. v. Printing Industries Ass'n*, 600 S.W.2d 264, 265 (Tex.1980). This suit was filed by appellees without such legislative consent or statutory authorization to sue the State. Prior to the trial on the merits appellant moved for dismissal on the ground of sovereign immunity, citing appellees' lack of consent from the State to bring the suit. This motion was denied by the trial court by written order signed October 9, 1982. Appellant re-urged this motion at the beginning of the trial and it was

again denied by the court, orally. Although this interlocutory ruling was not expressly carried forward into the final judgment, we presume for purposes of this appeal that the trial court intended to, and did, rule on this issue against appellant in the final judgment. *North East Independent School District v. Aldridge*, 400 S.W.2d 893, 897–98 (Tex.1966).

■ It is also the rule that an entity or person whose rights have been violated by the unlawful action of a state official, may bring suit to remedy the violation or prevent its occurrence, and such suit is not a suit against the State requiring legislative or statutory authorization. *Director, Etc. v. Printing Industries Ass'n*, supra. Section 16.25(a) of the Code provides that a person who believes that he is or will be damaged by a registration under this chapter may sue to cancel the registration in a district court having venue. Appellees alleged in their petition that they had been and will be damaged by the University's registration of the marks in question and the resulting licensing program, and the trial court found this fact in appellees' favor. Since this finding has not been challenged by appellant as being without support in the evidence, we must presume it is correct. *Crain v. Hill County*, 613 S.W.2d 367, 369 (Tex.Civ.App.—Waco 1981, writ ref'd n.r.e.). Arguing against appellant's claim of sovereign immunity, appellees assert that the University's registrations of the marks in question as its service marks are unlawful acts because the University is not the owner of the marks; and that rather than a suit seeking to control State actions, "this is a suit to remedy an invalid wrong against appellees and other citizens whose rights have been violated by unlawful or invalid actions of business persons employed by Texas A & M University," not requiring legislative or statutory authorization. We disagree with appellees' contentions that the University is not the owner of the service marks and that the registrations are unlawful or invalid acts.

■ The basic facts in the record are not disputed. Appellant obtained admissions of facts from appellees pursuant to Rule 169, Vernon's Tex.R.Civ.Proc., that: the University has used the marks which are the subject matter of this action in connection with higher educational services; that the University has the exclusive right to offer higher educational services using the marks which are the subject of this action; that the public associates the marks which are the subject of this action with the University; that consumers purchase goods bearing the marks which are the subject of this action in order to identify with the University; and that the University, "after adopting the service marks which are the subject of this action," has never ceased use of the marks for any period of time. These admissions were buttressed by testimony at trial from appellees' representatives to the effect that the University has used the marks; that the public associates the marks with the University; and that without this identification with the University the marks would have no value. Moreover, the certificates of registrations, the University's applications for the registrations with attached exhibits showing the University's use of the marks, all in evidence without objection, show use of the marks by the University for many years prior to the registrations on athletic uniforms, the football stadium, yell books, information brochures, University bulletins, magazines, stationery, and other campus literature. These exhibits show that the University's use of the mark "TEXAS AGGIES" began in 1920; that the use of the mark "Gig 'Em Aggies" began in 1931; that the use of the mark "Old Sarge" began in 1939; and that the use of the marks "ATM" and "TAMU" began in 1965. The evidence shows that during this same time of use by the University, others, including manufacturers and retailers like appellees as well as individual students and graduates and their relatives and other friends of the University, have used these marks on various goods and products without objection from the University or appellant. Appellees argue that this coincident use of the marks by the University and the public broadly without objection from the Univer-

sity denies the University and appellant any claim of ownership of the marks. However, there is no evidence rebutting the University's use of the marks in connection with its higher educational services, and there is no evidence that any other person or entity has used the marks in connection with higher educational services.

Section 16.15(c) of the Code provides that a certificate of registration issued by the Secretary of State "is admissible in evidence as prima facie proof of (1) the validity of the registration; (2) the registrant's ownership of the mark; and (3) the registrant's exclusive right to use the mark in commerce in this State in connection with the goods or services specified in the certificate, subject to any conditions and limitations stated in the certificate." Under the provisions of this statute the service mark registrations in evidence in our case carried rebuttable presumptions of the validity of the registrations, of the University's ownership of the service marks, and of the University's exclusive right to use the mark in connection with higher education services. There is no rebutting evidence in the record. But even if this statutory presumption is disregarded, the evidence conclusively established these facts in the University's favor notwithstanding it was appellees' burden in order to succeed to adduce proof disputing the University's ownership and right of use of the service marks.

Appellees also rely upon § 16.08(a)(5)(A) of the Code which provides that a mark otherwise entitled to registration is not registrable if it is "merely descriptive" of the applicant's services. We hold the marks in question are not descriptive of appellant's higher educational services. On their faces, they are not. Rather than describing the University's services, the marks in question identify and distinguish the source of those services. See *Application of Marriott Corp.*, 517 F.2d 1364 (Cust. & Pat.App.1975); *Application of Quik-Print Copy Shops, Inc.*, 616 F.2d 523 (Cust. & Pat.App.1980).

The University's licensing program is administered by its Director of Business Services, a department responsible for the non-educational "auxiliary" services at the University. The University had licensed 253 manufacturers at the time of trial. It does not license retailers, and it does not license manufacturers of educational materials. The licensing agreement used by the University refers to the marks as "trademarks and trade names." It purports to grant a nonexclusive license to the licensee to use the mark or marks licensed. The University represents in the agreement "that it is the owner of the trademarks and trade names and has the legal right to grant licenses therefor." The license is granted upon the payment of a royalty fee by the manufacturer to the University, normally 6% of the total net selling price of the products manufactured. The agreement reserves to the University the full ownership of the marks; the right of access to the licensee's books to verify sales and royalty computations; and the right to maintain "such reasonable quality, servicing, and manufacturing standards as may be prescribed by licensor." The University has not sought to license any appellee, and it has not threatened an appellee with any form of action in connection with its service marks or the licensing program. However, the University will not handle in its campus bookstore any merchandise bearing the marks that do not come from a licensed manufacturer.

Findings of fact and conclusions of law filed by appellees with the trial court to support the court's final judgment, which were adopted by the court, evidence that appellees abandoned their action for injunctive relief and sought the only relief granted them by the court, cancellation of the service mark registrations. In any event, independent issues of the validity of the licensing agreements and whether their use by the University should be enjoined are not before us, since appellees assert no complaint on appeal concerning the trial court's apparent denial of their plea for injunction.

We agree with appellant and hold that there is no evidence supporting the trial court's finding that the University is not the owner of the registered service marks because it has not used the marks. Ordinarily, this ruling would require that we sustain appellant's second point of error and reverse the judgment and render judgment that appellees take nothing. However, it is our view and holding that appellees' suit to cancel the registrations is an attempt to control valid and proper state action that is not maintainable without the State's consent. Accordingly, we sustain appellant's first point of error and order the suit dismissed.

The judgment is reversed. This case is remanded to the trial court with instructions to dismiss the suit for want of jurisdiction.