# IN THE UNITED STATES COURT OF APPEALS

# FOR THE FIFTH CIRCUIT

―――――――――

m 98-20593

―――――――――


IGLOO PRODUCTS CORPORATION,

Plaintiff-Counter Defendant-
Appellee,

VERSUS

BRANTEX, INC.,

Defendant-Counter Claimant-
Appellant.

―――――――――――――

Appeal from the United States District Court
for the Southern District of Texas

―――――――――――――

February 11, 2000

Before HIGGINBOTHAM and SMITH, Circuit Judges, and DUPLANTIER, District Judge.[*]

JERRY E. SMITH, Circuit Judge:

Igloo Products Corporation ("Igloo") sued Brantex, Inc. ("Brantex"), to defeat Brantex's registration of the words "kool pak" with the Patent and Trademark Office ("PTO") as a words-only trademark (a "word mark"). Brantex counterclaimed under the Lanham Act, 15 U.S.C. § 1051 *et seq*., for trademark infringement, trademark counterfeiting, trademark dilution, and unfair competition, and asserted state law causes of action. Igloo prevailed except as to its damages claim. Finding no reversible error, we affirm.

I.

Since 1983, Brantex (which later changed its name to "Kool Pak") made soft-sided portable containers that it called "kool paks." It registered a "composite mark" (a trademark

―――――――――

* District Judge of the Eastern District of Louisiana, sitting by designation.

including both words and images in a distinct manner), consisting of the words "kool pak" alongside a penguin carrying one of the products, with the PTO in 1985. In granting this registration, the PTO required Brantex to disclaim any exclusive right to the use of the words "kool pak" alone. Brantex began the process of registering a different composite mark including penguin and "kool pak" in 1991, but abandoned the application when the PTO again required it to disclaim an exclusive right to the words alone.

In 1993, Brantex tried again, applying for a composite mark, but noting in this application that the "word mark Kool Pak" had become distinctive through substantially exclusive and continuous use for the five years immediately preceding the application. In June 1994, the PTO registered the second penguin mark without requiring Brantex to disclaim an exclusive interest in the words "kool pak" standing alone.

Also in 1993, Brantex applied for registration of the words "kool pak" as a word mark (standing alone, without the penguin or a peculiar design). Igloo, which since 1992 had been marketing products substantially similar to Brantex's "kool pak" in advertising that referred to the products as "Cool Pack 6" and "Cool Pack 12," opposed registration of the word mark in the PTO.

Igloo sued, seeking (1) a declaratory judgment that Igloo's use of the term "cool pack" for soft-sided insulated portable beverage coolers did not infringe Brantex's federally registered trademark for the words "kool pak" with a penguin design; (2) cancellation of Brantex's federal and state trademark registrations; (3) an injunction preventing Brantex from registering the words "kool pak" alone;

and (4) damages for misrepresentation and unfair competition. Brantex counterclaimed under the Lanham Act, 15 U.S.C. § 1051 *et seq.*, for trademark infringement, trademark counterfeiting, trademark dilution, and unfair competition, and asserted state law causes of action.

The jury returned a verdict favorable to Igloo, finding, *via* special interrogatories, that: (1) use of the *words* "kool pak" was "descriptive" as that term is used in trademark law; (2) the words had not themselves acquired secondary meaning; (3) Igloo's use of the words "cool pack" did not raise a likelihood of confusion issue with the use of the words "kool pak" alone; (4) trademark infringement, dilution, and counterfeiting under federal law had not occurred; (5) trademark dilution under Florida law had not occurred; and (6) trademark dilution under Texas law had not occurred. The jury also found that Brantex had not fraudulently obtained its trademark registrations and that Igloo had established an acceptable "fair-use" defense to Brantex's trademark actions.

II.

Both of the issues on appeal raise the question whether the jury was properly instructed. The standard of review in such cases was nicely summarized in *Bender v. Brumley*, 1 F.3d 271, 276-77 (5th Cir. 1993), which explained that

[w]e afford trial judges wide latitude in fashioning jury instructions and ignore technical imperfections, but the trial court must instruct the jurors, fully and correctly, on the applicable law of the case, and guide, direct, and assist them toward an intelligent understanding of the legal and factual issues involved in

their search for truth. Reversal is therefore appropriate whenever the charge as a whole leaves us with substantial and ineradicable doubt whether the jury has been properly guided in its deliberations. Assessing whether the jury was properly guided, however, is only one-half of the inquiry. Even though error may have occurred, we will not reverse if we find, based upon the record, that the challenged instruction could not have affected the outcome of the case.

(Internal quotations, citations, and ellipses omitted.)

### III.

Brantex contends that the court misinstructed the jury with regard to its trademark infringement and counterfeiting claims and to some of Igloo's claims against Brantex. We consider each assertion in turn.

### A.

Understanding the argument requires some background in the taxonomy of "mark-distinctions" for determining whether a trademark-in-use is protectable as a legal trademark. As this court recently explained,

In order to be registered as a trademark, a mark must be capable of distinguishing the applicant's goods from those of others. Marks are often classified in categories of generally increasing distinctiveness; following the classic formulation set out by Judge Friendly, they may be (1) generic; (2) descriptive; (3) suggestive; (4) arbitrary; or (5) fanciful. The latter three categories of marks are entitled to trademark protection because they are inherently distinctiveSSthey serve to identify a particular source of a

product. Generic marks, in contrast, refer to the genus of which the particular product is a species and are neither registerable as trademarks nor protectable under § 43(a). The final category, consisting of marks that describe a product, do not inherently identify a particular source, and hence cannot be protected unless they acquire distinctiveness through secondary meaning. Such secondary meaning is achieved when, in the minds of the public, the primary significance of a product feature or term is to identify the source of the product rather than the product itself.

*Sugar Busters, LLC v. Brennan*, 177 F.3d 258, 268 (5th Cir. 1999) (internal quotations, citations, and ellipses omitted). Thus, it is important to decide in which category a given mark belongs.

The court asked the jury to determine what category the word mark "kool pak," standing alone (the word mark Brantex had applied for, but that Igloo had opposed, and that therefore became the focus of this litigation), occupied. The jury determined that the word mark was descriptive. The court also asked the jury, in the event it found the mark to be descriptive, to determine whether the word mark had cultivated a secondary meaning. The jury found that it had not.

It followed from this finding that Brantex's use of the word mark "kool pak" alone, without the penguin, was not entitled to trademark protection. As a result, it would avail Brantex nothing to prove that any of Igloo's uses of the words "cool pack" created a likelihood of confusion with the words "kool pak"; rather, Brantex would have to prove that Igloo's use of the words "cool pack" created a likelihood

of confusion with the composite mark for which Brantex had previously established a valid registration: the "kool pak"-plus-penguin design.[1]

Brantex objected to this manner of presentation to the jury. Noting that its "federal registration for KOOL PAK & Design [the words-plus-penguin composite mark] was issued under Section 2(f) of the [Lanham] Act . . . without any disclaimer," Brantex argued that "[t]his means the PTO determined that the words KOOL PAK had acquired distinctiveness, or secondary meaning, and that no other person had the right to use a similar mark." Were Brantex's contention true, of course, it would render the question to the jury about whether the word-mark had developed secondary meaningSSand the failure affirmatively to instruct that the word-mark *had* presumptively developed secondary meaningSSerror.

## B.

Brantex's contention, however, is false as a statement of law, at least with regard to Brantex's federal registrations. As Brantex admitted, the federal registration it had already received was for the *composite* mark, not the word mark alone. Brantex is right to note that registration of a mark "serves as prima facie evidence that a secondary meaning existed"

during the period of registration. *See Waples-Platter Co. v. General Foods Corp.,* 439 F. Supp. 551, 578 (N.D. Tex. 1977). That *prima facie* presumption, however, pertains to the *whole mark*SSin this case the words-plus-penguin compositeSSrather than to any individual portion of the mark. *In re National Data Corp.*, 753 F.2d 1056, 1059 (Fed. Cir. 1985); *see also In Re Bose Corp.*, 772 F.2d 866, 873 (Fed. Cir. 1985). This is true even if a registration application is accepted, as occurred in the case of Brantex's 1993 composite registration, without an explicit demand on the part of the PTO that the registrant disclaim any exclusive right to some portion of the complete trademark.[2]

Thus, at least with regard to the federal registration, it would have been error for the district court to have *granted* Brantex a presumption of secondary meaning in the word-mark "kool pak." The court correctly found that the question of secondary meaning was a question of fact to be determined by the jury.

## C.

The state trademarks present a slightly different question. The district court found that "Brantex's Texas and Florida registrations were also of the logo 'kool pak' with a penguin design." Brantex asserts, however, that

---

[1] The jury implicitly found that there was no likelihood of confusion between the composite (words-plus-penguin) design and Igloo's use of the words "cool pack" when it found, in answer to another of the questions, that use of "cool pack" did not create a likelihood of confusion with Brantex's use of the words "kool pak" alone. If using "cool pack" did not create confusion with a mark consisting only of "kool pak" standing alone, then surely it could not create confusion with a mark consisting of "kool pak" accompanied by an illustrated penguin.

[2] *See* 15 U.S.C. § 1056(a) ("The Commissioner *may* require the applicant to disclaim an unregisterable component of a mark otherwise registerable" (emphasis added)); *National Data Corp.*, 753 F.2d at 1059 ("The absence of a disclaimer does not . . . mean that a word or phrase in a registration is, or has become, distinctive[.] The power of the PTO to accept or require disclaimers is discretionary under the statute, . . . and its practice over the years has been far from consistent. Thus, it is inappropriate to give the presence or absence of a disclaimer any legal significance.").

the state registrations were "for the mark KOOL PAK alone."

1.

The record indicates that the district court did not err in finding that the Florida trademark registration registered the composite mark rather than the word mark alone. Florida specifies in its "Little Lanham" statute that multiple copies of the exact mark to be registered must be sent with the application. *See* FLA. STAT. ANN. § 495.031(5) (requiring facsimile in triplicate). The only evidence submitted by Brantex to support its claim that it had registered the word mark alone in Florida was a copy of the certificate of registration issued by the Florida Secretary of State's office. That certificate does state, in the text portion of the document, that "BRANTEX . . . has registered KOOL PAK to be used as a mark." The face of the certificate, however, contains a copy of the composite mark, which would not have "fit" in the text-only portion of the certificate.

Hence, the evidence supplied by Brantex as to exactly what it registered in FloridaSSthe word mark or the composite markSSdid not establish that Brantex had actually registered the word mark alone. The court did not abuse its discretion, therefore, in failing to find that Brantex had established its entitlement to a presumption of validity in that word mark.

2.

Texas also specifies in its "Little Lanham" statute that multiple copies of the exact mark to be registered must be sent with the application. *See* TEX. BUS. & COM. CODE ANN. § 16.10(c)(2)(A) (requiring facsimile in duplicate). The record indicates that the district court erred in finding that Brantex's Texas registration was for the composite mark rather than the word mark. The Texas Certificate of Trademark issued to Brantex lists the words "kool pak" alone as the registered mark, without attachment on the certificate of any composite mark. Moreover, Brantex included in the record its application for trademark registration, which was for "the words 'KOOL PAK'" alone.

This fact does not avail Brantex, however. Even if it did register the word mark rather than the composite mark in Texas, it is not evident that the Texas Little Lanham Act, as in effect when this suit was proceeding in the district court, provided for any presumptions of secondary meaning. The Texas act includes a provision that creates a "presumption of validity" in any trademark for which "[a] certificate of registration [is] issued by the secretary of state under this chapter." *See* TEX. BUS. & COM. CODE ANN. § 16.15. *See also All Am. Builders, Inc. v. All Am. Siding, Inc.*, 991 S.W.2d 484, 489 (Tex. App.SSFort Worth 1999, n.w.h.) (recognizing presumption); *Texas A&M Univ. Sys. v. University Book Store, Inc.*, 683 S.W.2d 140, 144 (Tex. App.SSWaco 1985, writ ref'd n.r.e.) (same). Until September 1999, however, the Texas act also required that suits filed pursuant to the act be

tried de novo . . . and every decision or action concerning an issue in the suit made or taken by the secretary of state before the suit was filed is void [and] the district court shall determine the issues in the suit as if no decision had been made or action taken by the secretary of state; [and] the district court may not apply in any form the substantial evidence rule in reviewing a decision or action of the secretary of state.

ACTS 1967, 60th Leg., p. 2343, ch. 785, § 1

(amended 1999) (current version at TEX. BUS. & COM. CODE ANN. § 16.24 (Vernon Supp. 2000)).

The plain language of these provisions, taken together, indicates that even if we conclude that Brantex registered the word mark alone in Texas, Brantex was entitled to no presumptions of validity as a result of that registration, which was a "decision or action concerning an issue in the suit made or taken by the secretary of state before the suit was filed." The negative implication of the Texas cases recognizing the presumption, however, is that § 16.24 does not invalidate it.[3] We may assume *arguendo* that Brantex was entitled to a presumption of validity in a Texas word mark for "kool pak" alone, however, because such a presumption does nothing to alter the ultimate conclusion in this case.

### D.

Even if we find that a *prima facie* presumption obtained to the "kool pak" word mark, we still would not find error in failing to provide the desired instruction.

> In all civil actions and proceedings not otherwise provided for by Act of Congress or by these rules, a presumption imposes on the party against whom it is directed the burden of going forward with evidence to rebut or meet the presumption, but does not shift to such party the burden of proof in the sense of the risk of nonpersuasion, which remains throughout the trial upon the party on whom it was originally cast.

FED. R. EVID. 301. Hence, even if Brantex were entitled to the presumption of secondary meaning, the burden of *persuasion* on the question of secondary meaning would not have shifted to Igloo; instead, merely a burden of *production* would have arisen in Igloo.

Whether Igloo met that burden of production is ultimately a question for the court. If it failed to meet the burden, then the question of secondary meaning would not have properly gone to the jury; the presumption in favor of Brantex would have prevailed. If Igloo met the burden, then the advantage created by the presumption would have disappeared, and Brantex would have faced the same burdens it faced before the introduction of the presumption.

Thus, if Brantex *had* deserved the relevant presumption, and had Igloo provided no evidence to rebut it, then Brantex might well have asked that the question of secondary meaning be taken from the jury entirely. Under no circumstances, however, did it make sense for Brantex to ask for an instruction about the *prima facie* presumption to *accompany* the question for the jury about secondary meaning; to admit that the question of secondary meaning was still one for the jury was to admit that the *prima facie* presumption had fallen out of the case.[4]

---

[3] *See All Am. Builders*, 991 S.W.2d at 489; *University Book Store*, 683 S.W.2d at 144. Interpretation of the previous iteration of § 16.24 will matter little to future cases, because the current version of § 16.24, as amended effective September 1999, expressly limits the elimination of the § 16.15 presumption to instances in which the "secretary of state takes final action *refusing to register a mark under Section 16.109 or to renew the registration of a mark under Section 16.14*." § 16.24 (Vernon Supp. 2000) (emphasis added).

[4] *Cf. St. Mary's Honor Ctr. v. Hicks*, 509 U.S.
(continued...)

IV.

Brantex also claims that the district court misinstructed the jury with regard to Igloo's fair-use defense. Because the jury found, under proper instruction, that Brantex had failed to establish its claims against Igloo, we need not reach the question whether the court properly instructed the jury regarding an affirmative defense to those claims.

AFFIRMED.

---

[4](...continued) 502, 506 (1993) (discussing the role of a similar presumption in the setting of employment discrimination suits); *Olitsky v. Spencer Gifts, Inc.*, 964 F.2d 1471, 1478 (5th Cir. 1992) (same); *Vision Ctr. v. Opticks, Inc.*, 596 F.2d 111, 119 (5th Cir. 1979) (recognizing that presumptions accorded to marks under the Lanham Act are rebuttable).