# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 17-30859

United States Court of Appeals
Fifth Circuit

**FILED**
August 22, 2018

Lyle W. Cayce
Clerk

ALLIANCE FOR GOOD GOVERNMENT,

      Plaintiff - Appellee

v.

COALITION FOR BETTER GOVERNMENT,

      Defendant - Appellant

Appeal from the United States District Court
for the Eastern District of Louisiana

Before DAVIS, HAYNES, and DUNCAN, Circuit Judges.

STUART KYLE DUNCAN, Circuit Judge:

      This federal trademark infringement action involves a dispute between two civic organizations over their logos:

 

The older organization, Alliance for Good Government, developed its logo in the late 1960s and has used it for fifty years in advertisements and sample

No. 17-30859

ballots to promote political candidates in New Orleans and throughout Louisiana. The younger organization, Coalition for Better Government, developed its logo more recently (in the early 1980s or 1990s) and has also used it in sample ballots to promote political candidates in New Orleans. While the groups have locked talons before, the present appeal arises out of Alliance's 2017 lawsuit seeking to enjoin Coalition's use of its logo for federal trademark infringement under the Lanham Act. The district court granted Alliance summary judgment, finding that Coalition's logo infringed Alliance's marks as a matter of law, and enjoined Coalition from using both its name and logo in political advertisements. Coalition appeals that ruling.

On appeal, Coalition raises broad threshold questions concerning the applicability of the Lanham Act to what it characterizes as its political, non-commercial speech. We decline to address those questions, because Coalition failed to properly raise them below and the district court never reached them. Coalition also attacks the summary judgment, claiming that fact issues remain as to whether Alliance's marks are valid and whether Coalition's logo would likely create confusion with Alliance's. On the latter point, Coalition's most curious argument—urged below and renewed on appeal—is that the logos are different because its logo features a *hawk* while Alliance's features an *eagle*. We conclude the district court did not err in deciding the birds are identical.

Reviewing the summary judgment ruling *de novo*, we conclude that the evidence establishes without dispute that Alliance's logo is a valid composite mark and that the use of Coalition's logo infringes Alliance's composite mark as a matter of law. We modify the district court's injunction in one respect, however. By its terms, the injunction restrains Coalition from using its *name* as well as its logo. We find that aspect of the injunction overbroad and therefore modify it to restrain Coalition's use of its logo only.

No. 17-30859

Accordingly, we AFFIRM the district court's summary judgment ruling, but MODIFY the injunction to restrain only the use of Coalition's logo.

I.

A.

Alliance for Good Government ("Alliance") is a non-profit civic organization formed in 1967 to promote "honest and open government." Alliance's founding chapter is in Orleans Parish, but it operates both in New Orleans and throughout Louisiana. The organization hosts political forums, endorses candidates, and participates in campaigns through advertising. It also distributes and publishes sample ballots featuring endorsed candidates.

Alliance ballots dating back to 1969 feature the same logo it continues to use today—a design with the organization's name in blue type on a rectangular white background arranged around a stylized bird. Alliance considers its bird to be an eagle. In 2013, Alliance registered its service marks[1] with the United States Patent and Trademark Office ("PTO"): the word mark "Alliance for Good Government," and the composite mark consisting of the entire logo.[2]

---

[1] A "service mark" means "any word, name, symbol, or device, or any combination thereof used by a person … to identify and distinguish the services of one person … from the services of others and to indicate the source of the services, even if that source is unknown." 15 U.S.C. § 1127. A "word mark" refers to mark comprised only of words, while a "design mark" refers to a mark comprised of symbols. *See, e.g., Nola Spice Designs, LLC v. Haydel Enters., Inc.,* 783 F.3d 527, 537, 540 (5th Cir. 2015). A "composite mark" refers to a mark "containing both words and symbols in a distinct manner." *Igloo Prods. Corp. v. Brantex, Inc.*, 202 F.3d 814, 815 (5th Cir. 2000); *see also* 4 MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION § 23:47 (5th ed. 2018) ("McCarthy") (discussing comparison of "composite marks involving both designs and words").

[2] Specifically, Alliance registered its word mark as No. 4,330,957 on May 7, 2013. This mark is for the name "Alliance for Good Government" in "standard characters without claim to any particular font, style, size, or color." Alliance registered its composite mark as No. 4,349,156 on June 11, 2013. This mark is described as follows: "[A] bold line drawing of an eagle with outstretched wings with head facing left. Above the image is the word 'Alliance' and below the eagle are the words 'good government' and on the next line is 'since 1967.'"

No. 17-30859

Coalition for Better Government ("Coalition") is a non-profit civic organization formed in New Orleans in 1982 to endorse political candidates. Coalition operates mainly in New Orleans and promotes preferred candidates by advertising sample ballots in New Orleans newspapers. Coalition and Alliance sometimes endorse the same, or opposing, candidates: candidates endorsed by each have run in the same election at least twice.

Coalition also has a logo, which it uses in sample ballots dating back to at least 1992 (possibly the early 1980s). Coalition's logo features its name in white type on a rectangular blue background arranged around a stylized bird. Coalition's bird appears identical to Alliance's, but Coalition believes the birds are different types: Coalition considers its bird to be a hawk, not an eagle.[3]

Because pictures are worth a thousand words, here are the logos again:



B.

Alliance first sued Coalition for trademark infringement in 2008 in Louisiana state court. After skirmishing over venue, Alliance moved to dismiss its suit when it believed Coalition had stopped activity and ceased use of the Coalition logo. But in 2016 Coalition resumed using its logo to endorse political candidates. Indeed, in the primary elections for Louisiana district judges on March 25, 2017, Alliance and Coalition endorsed opposing candidates. That

---

[3] The record reflects that Coalition has used at least two slightly different bird designs in its logos. The bird on Coalition's 1992 ballot looks modestly different from the bird on its post-2008 ballots. But because Alliance challenges the use of Coalition's logo only from 2008 forward, we need not address whether Coalition's 1992 logo infringed Alliance's mark.

No. 17-30859

same month Coalition filed two applications with the PTO to register its name and logo, which Alliance opposed.[4]

In April 2017, Alliance sued Coalition in federal court claiming federal trademark infringement under 15 U.S.C. § 1114, as well as various other federal and state trademark and unfair trade practice claims. Coalition counterclaimed for, *inter alia*, fraudulent trademark procurement under 15 U.S.C. § 1120. In August 2017 Coalition moved for summary judgment arguing Alliance's suit was barred by laches, and that same month Alliance moved for partial summary judgment solely on federal trademark infringement. The district court held a hearing on the cross-motions. Ruling from the bench, the court denied Coalition's motion for summary judgment on laches and granted Alliance's motion for partial summary judgment on federal trademark infringement. Alliance voluntarily dismissed its remaining claims. Subsequently, the district court issued an order permanently enjoining Coalition from using both its name and logo. Coalition timely appealed the district court's trademark infringement ruling and injunction.[5]

## II.

We review a grant of summary judgment *de novo*, applying the same standard as the district court. *Smith v. Reg'l Transit Auth.*, 827 F.3d 412, 417 (5th Cir. 2016). Summary judgment is proper where the pleadings and record materials show no genuine dispute as to any material fact, entitling the

---

[4] Coalition's word mark application, dated March 17, 2017, seeks to register the name "Coalition for Better Government" in "standard characters, without claim to any particular font style, size, or color." Coalition's composite mark application, also dated March 17, 2017, seeks to register its logo, described as "white letters spelling the words 'Coalition For Better Government' with a drawing of a hawk." Attached to the application are Coalition's present logo (the subject of this suit) and the 1992 version. The parties inform us that the PTO has stayed Alliance's opposition proceeding pending the outcome of this suit.

[5] Coalition raises no argument on appeal concerning the district court's laches ruling, and consequently the issue is not before us.

## No. 17-30859

movant to judgment as a matter of law. FED. R. CIV. P. 56(a). If the moving party initially shows the non-movant's case lacks support, "the non-movant must come forward with 'specific facts' showing a genuine factual issue for trial." *TIG Ins. Co. v. Sedgwick James*, 276 F.3d 754, 759 (5th Cir. 2002). We must view the evidence in the light most favorable to the non-moving party, drawing all justifiable inferences in the non-movant's favor. *Envtl. Conservation Org. v. City of Dallas*, 529 F.3d 519, 524 (5th Cir. 2008).

### III.

To prevail on a claim of federal trademark infringement under the Lanham Act, 15 U.S.C. § 1051 *et seq.*, a plaintiff must show (1) ownership of a legally protectable mark and (2) a likelihood of confusion created by an infringing mark. *Nola Spice Designs, LLC v. Haydel Enters., Inc.*, 783 F.3d 527, 536 (5th Cir. 2015); *Am. Rice, Inc. v. Producers Rice Mill, Inc.*, 518 F.3d 321, 329 (5th Cir. 2008).[6] On appeal, Coalition first argues that the Lanham Act cannot apply to its marks because Coalition engages only in "political speech" and does not engage in "commerce or the sale of goods." Coalition failed to raise these arguments below, however, and we decline to address them. Second, Coalition attacks the district court's summary judgment grant, arguing that the court erred in ruling that Alliance had a valid mark and that Alliance proved Coalition's marks created a likelihood of confusion. We affirm the district court's ruling and injunction as to Coalition's logo but modify the injunction as to Coalition's name.

---

[6] The Lanham Act provides in relevant part that a person "shall be liable in a civil action" by the registrant of a mark if the person, without the registrant's consent, "use[s] in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive[.]" 15 U.S.C. § 1114(1)(a).

No. 17-30859

A.

As a threshold matter, Coalition argues that the Lanham Act cannot apply to its marks because Coalition engages only in "political speech" and is a non-profit entity not "engaged in commerce or the sale of goods." Coalition failed to properly raise these arguments in the district court. To preserve either issue for appeal, Coalition had to "'press and not merely intimate the argument during the proceedings before the district court … to such a degree that the district court ha[d] an opportunity to rule on it.'" *Keelan v. Majesco Software, Inc.*, 407 F.3d 332, 340 (5th Cir. 2005) (quoting *N.Y. Life Ins. Co. v. Brown*, 84 F.3d 137, 141 n.4 (5th Cir. 1996)) (brackets added). Coalition did not do so and we therefore decline to reach the arguments. *See, e.g., Reyes v. Manor Indep. Sch. Dist.*, 850 F.3d 251 (5th Cir. 2017) ("We do not consider issues brought for the first time on appeal.").

During summary judgment proceedings, Coalition (1) raised the defense of laches, (2) urged the invalidity of Alliance's marks due to fraud and lack of distinctiveness, and (3) argued that fact issues precluded summary judgment on likelihood of confusion. Nowhere in those proceedings did Coalition brief or articulate—much less "press"—the argument that its political or non-profit nature insulates it from Alliance's trademark infringement claims. Because Coalition said nothing about those issues, the district court's ruling understandably did not address them. "'If a party fails to assert a legal reason why summary judgment should not be granted, that ground is waived and cannot be considered or raised on appeal.'" *Keelan*, 407 F.3d at 339-40 (quoting *Keenan v. Tejeda*, 290 F.3d 252, 262 (5th Cir. 2002)).

To be sure, Coalition's answer to Alliance's complaint raised—among thirteen affirmative defenses—the defense that "its actions constitute purely

No. 17-30859

non-commercial and political free speech."[7] But Coalition never developed the argument beyond that cursory statement and, by the time of the summary judgment proceedings, the issue had vanished. The argument is thus waived. *See, e.g., Keenan*, 290 F.3d at 262 (explaining that "'[e]ven an issue raised in the complaint but ignored at summary judgment may be deemed waived'") (quoting *Grenier v. Cyanamid Plastics, Inc.*, 70 F.3d 667, 678 (1st Cir. 1995)); *see also Frank C. Bailey Enters., Inc. v. Cargill, Inc.*, 582 F.2d 333, 334 (5th Cir. 1978) (holding that "an appellate court, in reviewing a summary judgment order, can only consider those matters presented to the district court").[8]

## B.

We proceed to Alliance's federal trademark infringement claim. The district court granted Alliance summary judgment, finding the evidence undisputed that Alliance's marks are legally protectable and that Coalition's use of its marks creates a likelihood of confusion with Alliance's. Unless

---

[7] Coalition's motion to dismiss also stated it engages in "political free speech," without ever making, briefing, or otherwise developing a distinct First Amendment claim.

[8] The interplay between the Lanham Act and the First Amendment's political and commercial speech doctrines raises a thicket of issues we decline to enter when the issues were not preserved or ruled on below. *See, e.g., Radiance Found., Inc. v. NAACP*, 786 F.3d 316 (4th Cir. 2015) (observing "[a]t least five of our sister circuits"—the D.C., 10th, 9th, 6th, and 8th—"have interpreted ['in connection with the sale … or advertising of any goods or services' in 15 U.S.C. § 1114(1)(a) of the Lanham Act] as protecting from liability all noncommercial uses of marks"); *id.* at 323-24 (adopting commercial speech doctrine as "guidance" in applying Lanham Act's "in connection" requirement); *but see United We Stand Am., Inc. v. United We Stand Am. N.Y., Inc.*, 128 F.3d 86, 90 (2nd Cir. 1997) (observing "[t]he Lanham Act has … been applied to defendants furnishing a wide variety of non-commercial public and civic benefits" and concluding that "[a] political organization that … endorses candidates under a trade name" satisfies the "in connection" requirement). This Court does not appear to have spoken directly on this debate but has held that a different section of the Lanham Act, 15 U.S.C. § 1125(a), encompasses only "commercial advertising or promotion." *Seven-Up Co. v. Coca-Cola Co.*, 86 F.3d 1379, 1382-83 (5th Cir. 1996); *see also TMI Inc. v. Maxwell*, 368 F.3d 433, 436 n.2 (5th Cir. 2004) (stating that "[t]his Court has previously determined that §43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1), which addresses false and misleading descriptions, only applies to commercial speech") (citing *Procter & Gamble Co. v. Amway Corp.*, 242 F.3d 539, 547 (5th Cir. 2001), *abrogated on other grounds by Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 134-37 (2014)).

otherwise indicated, the following discussion in parts B.1 and B.2 focuses on Alliance and Coalition's *logos*. We separately address the district court's injunction as to Coalition's *name* in part C, *infra*.

1.

On appeal, Coalition disputes the district court's conclusion that Alliance's composite mark is legally protectable. "To be protectable, a mark must be distinctive, either inherently or by achieving secondary meaning in the mind of the public." *Am. Rice*, 518 F.3d at 329 (citations omitted). We reject Coalition's arguments.

First, Coalition claims summary judgment was improper on this point because fact issues exist as to whether Alliance obtained its mark "by a false or fraudulent declaration" under 15 U.S.C. § 1120. Even assuming this argument is pertinent here,[9] it fails. Coalition's only evidence is Alliance's 2012 PTO declaration stating that, to the best of Alliance's knowledge, "no other person has the right to use such mark in commerce either in the identical form thereof or in such near resemblance thereto as to be likely … to cause confusion[.]" *See* 15 U.S.C. § 1051(b)(3)(D) (requiring this verification with trademark application). Coalition suggests this declaration was fraudulent because, in 2012, Alliance was "fully aware" Coalition was using its own mark. But Coalition misreads the declaration, which states only that Alliance

---

[9] Coalition points to no authority suggesting that whether a mark was fraudulently obtained under 15 U.S.C. § 1120 is relevant to whether a mark is "distinctive," the touchstone for validity in a section 1114 infringement claim. *See Nola Spice*, 783 F.3d at 537 (citing *Wal-Mart Stores, Inc. v. Samara Bros.*, 529 U.S. 205, 210-11 (2000)). Even if it were, however, we note that Coalition raised fraudulent procurement under § 1120 in a separate counterclaim that was dismissed by the district court. Coalition's appellate briefing neither mentions this ruling nor explains why it was incorrect, thus abandoning the issue. *Yohey v. Collins*, 985 F.2d 222, 224-25 (5th Cir. 1993); FED. R. APP. P. 28(a)(4). Consequently, we doubt that Coalition's fraud claim is pertinent to the distinctiveness of Alliance's mark, and we also doubt the issue is properly before us. Nonetheless, we reach the issue because Coalition raised it in opposing summary judgment and because it is easily resolved.

believed in 2012 that no one else had the "right" to use its mark or any confusingly-similar mark. The record is undisputed that Alliance believed it had the exclusive right to use its marks in 2012—otherwise, why would Alliance have sued in 2008 to stop Coalition from using its marks? The 2012 declaration does not remotely create a fact issue as to whether Alliance obtained its mark by fraud. *See, e.g., Meineke Disc. Muffler v. Jaynes*, 999 F.2d 120, 126 (5th Cir. 1993) (explaining that a fraudulent registration claim requires proof "by clear and convincing evidence that the applicant made false statements with the intent to deceive the licensing authorities").

Second, Coalition argues that Alliance offered no evidence that its mark was distinctive, and therefore legally protectable, and that fact issues persist on that issue. We disagree. Among other evidence, Alliance offered undisputed evidence that it registered both of its marks with the PTO in 2013—its word mark on May 7, 2013, and its composite mark on June 11, 2013. The registration of Alliance's composite mark with the PTO "is prima facie evidence that the mark[ ] [is] inherently distinctive." *Nola Spice*, 783 F.3d at 537 (citing *Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225, 237 (5th Cir. 2010); 15 U.S.C. § 1057(b)).[10] To be sure, Coalition could have offered evidence "to

---

[10] Unlike its composite mark, Alliance's word mark was registered under section 2(f) of the Lanham Act, which allows registration based on evidence that the mark has "become distinctive" based on "proof of substantially exclusive and continuous use thereof as a mark by the applicant in commerce for five years before the date on which the claim of distinctiveness is made." 15 U.S.C. § 1052(f); *see also, e.g., Lovely Skin, Inc. v. Ishtar Skin Care Prods., Inc.*, 745 F.3d 877, 882 (8th Cir. 2014). "[T]he presumption of validity that attaches to a § 2(f) registration includes a presumption that the registered mark has acquired distinctiveness, or secondary meaning, at the time of its registration." *Id.* at 882-83 (citations omitted). While this presumption differs from the presumption of inherent distinctiveness enjoyed by Alliance's composite mark, *see, e.g., Nola Spice*, 783 F.3d at 537 n.1, here we consider only Alliance's composite mark. *See, e.g., Igloo Prods. Corp.*, 202 F.3d at 817 (explaining that the prima facie presumption arising from a composite mark's registration "pertains to the *whole mark* … rather than to any individual portion of the mark") (citing *In re Nat'l Data Corp.*, 753 F.2d 1056, 1059 (Fed. Cir. 1985); *In re Bose Corp.*, 772 F.2d 866, 873 (Fed. Cir. 1985)) (emphasis in original).

overcome the presumption of inherent distinctiveness that accompanies [Alliance's] registration[.]" *Nola Spice*, 783 F.3d at 542 (citing *Amazing Spaces*, 608 F.3d at 234). But Coalition offered no evidence concerning the inherent distinctiveness of Alliance's composite mark; rather, it offered evidence concerning Alliance's word mark only (specifically, evidence of similarly-named organizations outside Louisiana). Such evidence has nothing to do with the central inquiry governing the inherent distinctiveness of Alliance's composite mark—namely, whether the mark's "design, shape or combination of elements is so unique, unusual or unexpected in this market that one can assume without proof that it will automatically be perceived by customers as an indicator of [the] origin" of Alliance's services, and whether Alliance's logo "was capable of creating a commercial impression distinct from the accompanying words." *Nola Spice*, 783 F.3d at 541 (quoting *Amazing Spaces*, 608 F.3d at 232, 243-44) (internal quotation marks omitted); *see also Seabrook Foods, Inc. v. Bar-Well Foods, Ltd.*, 568 F.2d 1342, 1344 (C.C.P.A. 1977) (setting forth analysis governing inherent distinctiveness of design marks).[11] Consequently, Coalition failed to rebut the presumption that Alliance's

---

[11] Alliance also argues on appeal that the unrebutted evidence showed its marks have achieved secondary meaning—such as evidence that Alliance has continuously used its marks for nearly fifty years in connection with hundreds of Louisiana elections in a variety of advertising media. *See also, e.g., Alliance for Good Gov't, Inc. v. St. Bernard Alliance for Good Gov't, Inc.,* No. 96-CA-0635, at *6 (La. App. 4th Cir. 12/18/96); 686 So.2d 83, 86 (holding that, for purposes of Louisiana trademark law, the name "Alliance for Good Government" has acquired secondary meeting "[g]iven the length of time that [Alliance] has been in existence" and given that "there is obviously a great amount of name recognition and/or goodwill associated with the name 'Alliance for Good Government'"). We need not reach the issue of secondary meaning, however, given the unrebutted presumption of distinctiveness attaching to Alliance's mark by virtue of its PTO registration.

No. 17-30859

composite mark was inherently distinctive and therefore legally protectable. The district court properly granted summary judgment on this point.

2.

Coalition also contests the summary judgment ruling that Coalition's use of its logo created a likelihood of confusion with Alliance's composite mark.

To prove infringement, a plaintiff "must show that the defendant's use of the mark 'creates a likelihood of confusion in the minds of potential customers as to the 'source, affiliation, or sponsorship'" of the product or service at issue. *Bd. of Supervisors for La. State Univ. Agric. & Mech. College v. Smack Apparel Co.,* 550 F.3d 465, 478 (5th Cir. 2008) (quoting *Westchester Media v. PRL USA Holdings, Inc.*, 214 F.3d 658, 663 (5th Cir. 2000)). The required showing is a "probability" of confusion, not merely a "possibility." *Xtreme Lashes v. Xtended Beauty,* 576 F.3d 221, 226 (5th Cir. 2009) (citing *Smack Apparel*, 550 F.3d at 478). This Circuit considers the following eight nonexhaustive "digits" to assess likelihood of confusion:

> (1) strength of the mark; (2) mark similarity; (3) product or service similarity; (4) outlet and purchaser identity; (5) advertising media identity; (6) defendant's intent; (7) actual confusion; and (8) care exercised by potential purchasers.

*See generally, e.g., Am. Rice*, 518 F.3d at 329 (citing *Oreck Corp. v. U.S. Floor Sys., Inc.*, 803 F.2d 166, 170 (5th Cir. 1986)); *Xtreme Lashes*, 576 F.3d at 227 (citing *Smack Apparel*, 550 F.3d at 478). "'The absence or presence of any one factor ordinarily is not dispositive; indeed, a finding of likelihood of confusion need not be supported even by a majority of the … factors.'" *Am. Rice,* 518 F.3d at 329 & n.19 (quoting *Conan Properties, Inc. v. Conans Pizza, Inc.*, 752 F.2d 145, 150 (5th Cir. 1985)). While likelihood of confusion typically presents a contested fact issue, "summary judgment may be upheld if the … record compels the conclusion that the movant is entitled to judgment as a matter of law." *Smack Apparel*, 550 F.3d at 474 (citing *Beef/Eater Rests., Inc. v. James*

12

*Burrough, Ltd.*, 398 F.2d 637, 639 (5th Cir. 1968)). In its ruling, the district court found that the first six digits pointed strongly towards a likelihood of confusion; that there was no evidence as to the seventh digit (actual confusion); and that the eighth digit (care exercised by potential purchasers) did not seem applicable. We agree with the district court's ruling as to the parties' logos.

*Strength of Mark.* The district court found that "Alliance has a very strong mark[.]" We agree. In assessing the strength of Alliance's composite mark, we look to two factors. First, we consider where the mark falls on a spectrum of distinctiveness ranging from "generic, descriptive, [or] suggestive" to "arbitrary and fanciful"—with the strength of the mark increasing as "'one moves away from generic and descriptive marks toward arbitrary marks.'" *Am. Rice,* 518 F.3d at 330 (quoting *Falcon Rice Mill, Inc. v. Cmty. Rice Mill, Inc.*, 725 F.2d 336, 346 (5th Cir. 1984)); *see also, e.g., Xtreme Lashes*, 576 F.3d at 227 (discussing spectrum) (citing *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992)).[12] Second, we consider "the standing of the mark in the marketplace." *Am. Rice*, 518 F.3d at 330 (citing *Sun Banks of Fla., Inc. v. Sun Fed. Sav. & Loan Ass'n*, 651 F.2d 311, 315 (5th Cir. 1981)).

Both factors support the strength of Alliance's composite mark. On the distinctiveness spectrum, the dominant feature of the logo—the stylized bird—is suggestive. *See, e.g., Xtreme Lashes*, 576 F.3d at 227 (explaining that "[i]t is

---

[12] A *generic* term "refers to the class of which a good is a member" and receives no trademark protection. *Xtreme Lashes*, 576 F.3d at 227 (citing *Two Pesos*, 505 U.S. at 768). A *descriptive* term "provides an attribute or quality of a good," and may be protected only if it has acquired secondary meaning. *Id.* A *suggestive* term "suggests, but does not describe an attribute of the good; it requires the consumer to exercise his imagination to apply the trademark to the good." *Id.* (citing *Zatarains, Inc. v. Oak Grove Smokehouse, Inc.*, 698 F.2d 786, 791 (5th Cir. 1983)). *Arbitrary* or *fanciful* terms "bear no relationship to the products or services to which they are applied." *Amazing Spaces*, 608 F.3d at 241 (quoting *Zatarains*, 698 F.2d at 790-91). Suggestive, arbitrary, and fanciful terms, "because their intrinsic nature serves to identify a particular source of a product, are deemed inherently distinctive and are entitled to protection." *Xtreme Lashes*, 576 F.3d at 227 (quoting *Two Pesos*, 505 U.S. at 763).

proper to give more weight to the distinctive portions of a mark and less weight to unremarkable or generic portions") (citing *In re Dixie Rests., Inc.*, 105 F.3d 1405, 1407 (Fed. Cir. 1997)). The image of the bird—which Alliance considers to be an eagle—is not "intrinsic" to the services of a good-government organization promoting preferred candidates, which would be characteristic of a merely generic or descriptive feature. *See, e.g., Am. Rice*, 518 F.3d at 330 (explaining that "the image of a girl icon being used to sell rice is not intrinsic to rice as a product"). Instead, the audience for Alliance's endorsements must "exercise some imagination" to associate the logo's bird symbolism with Alliance's services. *See, e.g., Xtreme Lashes*, 576 F.3d at 227 (explaining that "a suggestive term … requires the consumer to exercise his imagination to apply the trademark to the good"). Moreover, as explained, Alliance's composite mark enjoys an unrebutted presumption of distinctiveness[13] due to its PTO registration, *see Nola Spice*, 783 F.3d at 537, further enhancing the strength of the mark. *See, e.g., Amazing Spaces*, 608 F.3d at 237 (explaining that PTO registration constitutes prima facie evidence "that the registrant has the exclusive right to use the registered mark in commerce with respect to the specified goods or services"); 15 U.S.C. §§ 1057(b) & 1115(a); *see also, e.g., Am. Rice*, 518 F.3d at 330 (relying on presumption of validity from PTO registration as a factor in mark strength).[14] Finally, as to the standing of Alliance's mark

---

[13] We again note that Alliance's word mark enjoys an unrebutted presumption that it had secondary meaning when registered. *See* 15 U.S.C. § 1052(f); *see also, e.g., Lovely Skin*, 745 F.3d at 882-83. Thus, to the extent that Alliance's name is separately relevant to the strength of Alliance's composite mark, the name's presumed secondary meaning under section 1052(f) also supports the strength of the mark. *See, e.g., Viacom Int'l v. IJR Capital Investments, LLC*, 891 F.3d 178, 193 (5th Cir. 2018) (finding mark at issue strong "because it has acquired distinctiveness through secondary meaning").

[14] While Alliance does not argue the point, it appears from the record that Alliance's marks are eligible for incontestability status. *See* 15 U.S.C. § 1065 (providing an owner's right to use a mark "shall be incontestable," if the mark "has been in continuous use for five consecutive years subsequent to the date of … registration"). Incontestability furnishes

No. 17-30859

in the marketplace, it is undisputed that Alliance has used its mark for some fifty years to promote candidates in yearly elections in a variety of Louisiana advertising media. *See, e.g., Sun-Fun Prods. v. Suntan Research & Devel. Inc.*, 656 F.2d 186, 190-91 (5th Cir. Unit B Sept. 1981) (considering duration of use and promotion of the mark in assessing standing of the mark in the marketplace). Coalition offers no argument on appeal to counter these indicia of strength. We agree with the district court that the evidence points to the strength of Alliance's mark.

*Mark Similiarity.* The district court found that the two composite marks "looked exactly alike," strongly supporting likelihood of confusion. We agree.

In assessing mark similarity, we "compar[e] the marks' appearance, sound, and meaning." *Elvis Presley Enters. Inc. v. Capece*, 141 F.3d 188, 201 (5th Cir. 1998). "Similarity of appearance is determined on the basis of the total effect of the designation, rather than on a comparison of individual features," but "courts should give more attention to the dominant features of a mark." *Xtreme Lashes,* 576 F.3d at 228 (internal quotation marks and citations omitted); *see also, e.g., Sun-Fun Prods.*, 656 F.2d at 189 (noting the "well-established proposition that similarity of design stems from the overall impression conveyed by the mark and not a dissection of individual features") (citations omitted). The inquiry focuses, not on whether two marks are

---

"conclusive evidence" of the registrant's exclusive right to use the mark, *id.* § 1115(b), but does not relieve a plaintiff from his burden of proving infringement. *KPO Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111, 117 (2004). Incontestability does, however, preclude an infringement action from being "defended on the grounds that the mark is merely descriptive." *Park 'N Fly, Inc. v. Dollar Park and Fly, Inc.*, 469 U.S. 189, 205 (1985). It also shows strength of the mark. *See, e.g., Am. Rice*, 518 F.3d at 330 (noting in the strength-of-mark analysis that mark at issue was "incontestable"). The record reflects that Alliance's two marks were registered in May and June of 2013. We express no opinion on whether Alliance's marks satisfy the additional requirements of section 1065. *See, e.g.,* 15 U.S.C. § 1065(3) (requiring, *inter alia*, filing an affidavit with the Director within one year of expiration of the five-year period).

15

identical in every respect, but on "whether, under the circumstances of the use, the marks are sufficiently similar that prospective purchasers are likely to believe that the two users are somehow associated." *Capece*, 141 F.3d at 201 (citing RESTATEMENT (THIRD) OF UNFAIR COMPETITION § 21 cmt. c (1995)); *see also, e.g., Xtreme Lashes*, 576 F.3d at 229 ("Confusion of origin, not the identity of marks, is the gravamen of trademark infringement") (citing *KPO Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111, 117 (2004)).

To cut to the chase: Alliance and Coalition *have the same logo.* Same shape (rectangular). Same lines in the same place (two parallel, horizontal lines over and under the bird). Same arrangement of words (one big word above the top line; three smaller words below the bottom line). Same colors (one, blue on a white background; the other, white on a blue background). And, of course, the same birds. Not *similar* birds; the *same* birds—with the same down-pointed beak, gazing over the same wing (the right), sporting the same number of identically-stylized feathers (forty-three). As Alliance's brief succinctly puts it, "Coalition … uses a virtual copy of Alliance's trademarked logo[.]" It is no answer that Coalition's name is slightly different from Alliance's ("COALITION" instead of "ALLIANCE"; "BETTER" government instead of "good" government), or that the two logos use obverse color schemes. Rather than focusing on "a comparison of individual features," the district court correctly focused on the "total effect" of the logos and on their "dominant features." *Xtreme Lashes*, 576 F.3d at 228. The district court could not have said it better: "It looks like if [you] place one over the other[,] it would be virtually identical. Maybe exactly identical."

We must focus, of course, not merely on whether the marks are identical, but on whether the virtually-identical marks are used in a manner that prospective "purchasers" of the two organizations' services (i.e., voters who rely on Alliance and Coalition endorsements) are "likely to believe that the two

users are somehow associated." *Capece*, 141 F.3d at 201. Here we also find the evidence uncontested and overwhelming. It is undisputed that Alliance and Coalition work in the same field (elections), operate in the same market (New Orleans), use the same advertising channels (newspapers, sample ballots, flyers), and sometimes endorse the same or opposing candidates. Consequently, there is no question that the overall similarity of the marks, in the context of their use, creates a likelihood in the minds of voters that the two organizations are "somehow associated." *Capece*, 141 F.3d at 201.

Finally, we observe that Coalition attempted to distinguish the two logos—not by appearance, design, color, or font—but by the birds' *species*:

> DISTRICT COURT:  They look exactly alike to me, the two birds.
>
> COUNSEL: […] [N]o, they really aren't, your Honor, if you look at the wing span. The wing span of the eagle is different from the hawk. It's much larger and it fans out, and that's just the way the hawk looks.
>
> COURT:  I'll tell you, unless my eyes are deceiving me, … those two look exactly alike. They even look like the same feathers, same number of feathers, same arrangement, head is facing the same way, the same beak. I don't know if you call them – I don't know technically what kind of bird it is, but whatever they are, they look exactly alike to me.
>
> COUNSEL: Well, they're both birds of prey; one is an eagle and one is a hawk.
>
> COURT: Okay.
>
> COUNSEL: And when we filed with the Secretary of State to get our font, we said it was a hawk. We were represented by a hawk, not an eagle.

We agree with the district court: the birds are identical. Whether that bird is a *haliaeetus leucocephalus* (bald eagle), a *buteo jamaicensis* (red-tailed hawk), or some other bird, we need not determine.

No. 17-30859

*Product or service similarity.* "'The greater the similarity between the products and services, the greater the likelihood of confusion.'" *Xtreme Lashes*, 576 F.3d at 229 (quoting *Exxon Corp. v. Tex. Motor Exch. of Houston, Inc.*, 628 F.2d 500, 505 (5th Cir. 1980)). The district court found the services provided by the two organizations—endorsement of candidates—are "exactly the same." On appeal Coalition offers no response. The district court was correct.

*Outlet and purchaser identity.* The district court found that the outlet and purchaser identity for the two organizations was the same, and again Coalition offers no argument to the contrary. We agree with the district court. The undisputed evidence shows that Alliance and Coalition both target New Orleans voters, often through the same local channels. The greater the overlap between the outlets for, and consumers of, the services, the greater the potential for confusion. *See, e.g., Exxon*, 628 F.2d at 505 (finding similarity of products where both plaintiff and defendant were involved in "car care"); *cf. Amstar Corp. v. Domino's Pizza, Inc.*, 615 F.2d 252, 262 (5th Cir. 1980) (explaining that "[d]issimilarities between the retail outlets for and the predominant consumers of plaintiff's and [defendant's] goods lessen the possibility of confusion, mistake, or deception").

*Advertising media identity.* The district court found that the two organizations advertised on behalf of candidates "in the same or similar media." Coalition again fails to dispute this finding. We agree with the district court. The undisputed evidence shows both organizations advertised in New Orleans newspapers using the same means, such as sample ballots in the newspaper and flyers distributed by mail or by hand. "[A]dvertising in similar media [i]s an indication that consumers might be confused as to the source of similar products." *Am. Rice*, 518 F.3d 332 (brackets added); *see also, e.g., Xtreme Lashes,* 576 F.3d at 229 (inferring similar advertising and marketing

18

channels where both parties targeted the same class of buyers using "print advertisements, direct mailings, and Internet promotion").

*Defendant's intent to infringe.* "'[I]f the [challenged] mark was adopted with the intent of deriving benefit from the reputation of (the plaintiff,) that fact alone may be sufficient to justify the inference that there is confusing similarity.'" *Chevron Chem. Co. v. Voluntary Purchasing Grps., Inc.,* 659 F.2d 695, 703-04 (5th Cir. Unit A Oct. 1981) (quoting *Amstar Corp.,* 615 F.2d at 263) (brackets added). The district court found that, while there was no evidence of "actual intent to infringe," Coalition's logo "was certainly intended to mimic, and largely mimic[s] … Alliance's logo." In response, Coalition argues this issue should not have been resolved on summary judgment because Alliance did not introduce evidence of intent to infringe.

The district court correctly inferred from the striking similarity between the marks that Coalition's later mark was adopted "with the intent of deriving benefit from [Alliance]." *Chevron,* 659 F.2d at 704. "'[A]s soon as we see that a second comer in a market has, for no reason that he can assign, plagiarized the 'make-up' of an earlier comer, we need no more[.]'" *Id.* (quoting *American Chicle Co. v. Topps Chewing Gum, Inc.,* 208 F.2d 560, 563 (2nd Cir. 1953)). Coalition's own evidence bolsters this conclusion. At oral argument, Coalition drew our attention to a 1992 version of its logo featuring a slightly different stylized bird. But the mark challenged here is Coalition's *2008* mark, which features a newer iteration of the bird *exactly* like Alliance's. "[W]e can think of no other plausible explanation for such behavior" than Coalition's intent to benefit from Alliance's pre-existing reputation. *Chevron,* 659 F.2d at 704.

*Actual confusion.* Alliance admitted, and the district court acknowledged, that there was no evidence of actual confusion. On appeal Coalition relies heavily on this point, to no avail. "Although actual confusion is the 'best evidence' of confusion, it 'is not necessary to a finding of likelihood of

confusion.'" *Am. Rice*, 518 F.3d at 333 (quoting *Amstar*, 615 F.2d at 263); *see also, e.g., Exxon*, 628 F.2d at 506 (explaining that "evidence of actual confusion … is not essential to a finding of likelihood of confusion") (citation omitted).

*Care exercised by potential purchasers.* The district court did not analyze this factor and Coalition does not address it on appeal. *See, e.g., Smack Apparel*, 550 F.3d at 483 (explaining that, "[w]here items are relatively inexpensive, a buyer may take less care in selecting the item, thereby increasing the risk of confusion"). We need not consider this factor, since no one factor is dispositive, *Am. Rice*, 518 F.3d at 329, and since the balance of the factors point overwhelmingly in Alliance's favor.

***

In sum, we agree with the district court that Alliance established likelihood of confusion as a matter of law. *See, e.g., Viacom*, 891 F.3d at 192 (affirming summary judgment on likelihood of confusion even though "*every* digit" of confusion did not weigh in movant's favor) (emphasis in original). We therefore affirm the district court's injunction as to Alliance's composite mark.

C.

We modify the district court's injunction in one respect. The injunction restrains Coalition from using "the Coalition Marks," which are defined to encompass not only Coalition's logo, but also its "designation 'Coalition for Better Government.'" To the extent the injunction restrains Coalition from using the name "Coalition for Better Government" in connection with endorsing candidates or its other activities, we find the injunction overbroad. Based on our own review of the record, we conclude that Coalition's use of its trade name (as distinct from its logo) does not create a likelihood of confusion

20

No. 17-30859

with Alliance's differently-worded trade name.[15] In other words, Coalition may continue to use its name—provided it disassociates the name from its current logo or develops a different logo that does not create confusion with Alliance's composite mark. We therefore modify the injunction only to the extent that it restrains the use of Coalition's name. We leave the injunction intact in all other respects. *See, e.g., Wynn Oil Co. v. Purolator Chem. Corp.*, 536 F.2d 84, 86 (5th Cir. 1976) (modifying injunction on appeal by deleting one subsection).

## IV.

For the foregoing reasons, we AFFIRM the district court's summary judgment ruling, but MODIFY the injunction to restrain only the use of Coalition's logo.

AFFIRMED AS MODIFIED

---

[15] *See, e.g., Holidays Inns, Inc. v. Holiday Out in Am.*, 481 F.2d 445 (5th Cir. 1973) (affirming conclusion that "Holiday Inn" and "Holiday Out" were not confusingly similar); *see also, e.g., W.L. Gore & Assoc., Inc. v. Johnson & Johnson*, 882 F. Supp. 1454 (D. Del. 1995) (concluding "'Easy Slide' is dissimilar from 'Glide' in appearance and sound, tipping the balance against a finding of likelihood of confusion"), *aff'd*, 77 F.3d 465 (3rd Cir. 1996); *Coca-Cola Co. v. Essential Prods. Co.,* 421 F.2d 1374, 1376 (C.C.P.A. 1970) (holding Coca-Cola and Coco Loco not confusingly similar because, *inter alia*, "the articulate utterance of one mark is far from identical with that of the other mark"); *see also generally* 4 McCarthy §23:30 (collecting cases holding word marks not confusingly similar). We reach this conclusion based solely on the record before us and offer no view regarding Alliance's pending opposition to Coalition's PTO application, which was stayed pending this lawsuit.