# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

July 2, 2024

Lyle W. Cayce
Clerk

———————

No. 23-50319

———————

Lettuce Entertain You Enterprises, Incorporated,

*Plaintiff—Appellant*,

*versus*

Hotel Magdalena Joint Venture, L.L.C.,

*Defendant—Appellee*.

_____

Appeal from the United States District Court
for the Western District of Texas
USDC No. 1:21-CV-198

_____

Before Wiener, Haynes, and Higginson, *Circuit Judges*.
Jacques L. Wiener, Jr., *Circuit Judge*:[*]

In this trademark infringement dispute, Plaintiff-Appellant Lettuce Entertain You Enterprises, Inc. ("LEYE") appeals the district court's grant of summary judgment in favor of Defendant-Appellee Hotel Magdalena Joint Venture, L.L.C ("Hotel M"). Concluding that the district court misapplied the summary judgment standard, we REVERSE and REMAND for further proceedings.

_____

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 23-50319

## I. Background and Proceedings

LEYE is a national restaurant group with a portfolio of more than one hundred restaurants throughout the country. In 2013, it launched the "Summer House Santa Monica" brand of American fare restaurants, with the inaugural location in Chicago. Between 2013 and 2020, "Summer House Santa Monica" restaurants were opened in Bethesda, Maryland and Chicago O'Hare International Airport. Billing itself as "[t]he place where summer never ends," Summer House Santa Monica offers a "California-inspired menu . . . featur[ing] simple ingredients sourced from local grower partnerships and sustainable products." Airport-based iterations serve sit-down breakfast, lunch, and dinner, whereas the traditional restaurants serve breakfast, brunch, lunch, happy hour, dinner, and drinks. The restaurant brand is marketed through a variety of typical channels, including "websites, online reservation systems, a Frequent Diner Club loyalty program, mobile marketing, social media, email marketing and gift cards, and traditional public relations." Central to LEYE's marketing of the brand is its emphasis on the terms "Summer House," as reflected through, for example, the restaurant's signage, menus, and promotional materials. Additionally, LEYE keeps a federal, incontestable trademark registration for Summer House Santa Monica for "restaurant and bar services," with the terms "Santa Monica" disclaimed as descriptive of the restaurant's décor and food offerings. The registration issued in August 2014 and became incontestable under 15 U.S.C. § 1065 in January 2020.

Hotel M, on the other hand, is a part of The Bunkhouse Group, which owns and operates a number of hotels and restaurants throughout the country. Hotel M an 89-room hotel in Austin, Texas. In November 2020, Hotel M opened "Summer House on Music Lane," which is a full-service restaurant located within the hotel offering breakfast, brunch, lunch, happy hour, and dinner. The restaurant seeks to evoke "the sophisticated simplicity that

defines a lake house weekend," taking "inspiration from a lake house in Texas that people in Texas would go to in the summer." Like LEYE, Hotel M's branding and signage emphasizes the "Summer House" portion of the mark:



Believing Hotel M to be infringing on its "Summer House Santa Monica" mark, LEYE initiated an action against Hotel M, asserting claims for trademark infringement, unfair competition, and false designation of origin under the Lanham Act, 15 U.S.C. § § 1114(1)(a), 1125(a). It also brought common law trademark infringement and unfair competition claims under Texas law. Hotel M subsequently filed a motion for summary judgment, arguing that, as a matter of law, LEYE cannot establish that Hotel M's use of "Summer House on Music Lane" created a likelihood of confusion—a necessary predicate to succeeding on a trademark infringement theory. The district court agreed, granted Hotel M's motion, and dismissed LEYE's claims. LEYE appealed.

No. 23-50319

## II. Legal Standard

We review a district court's grant of summary judgment de novo. *Xtreme Lashes, LLC v. Xtended Beauty, Inc.*, 576 F.3d 221, 226 (5th Cir. 2009). We are "obliged to construe all the evidence and reasonable inferences deduced therefrom in a light most favorable to [LEYE], the nonmoving party in the court below." *Id.* (quoting *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1260 (5th Cir. 1991)). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "No genuine issue of material fact exists if the summary-judgment evidence is such that no reasonable juror could find in favor of the nonmovant." *Bd. of Supervisors for La. State Univ. Agric. & Mech. Coll. v. Smack Apparel Co.*, 550 F.3d 465, 474 (5th Cir. 2008) (quoting *Jenkins v. Methodist Hosp. of Dallas, Inc.*, 478 F.3d 255, 260 (5th Cir. 2007)).

"The gravamen for any action of trademark infringement or common law unfair competition is whether the challenged mark is likely to cause confusion." *Soc'y of Fin. Exam'rs v. Nat'l Ass'n of Certified Fraud Exam'rs*, 41 F.3d 223, 225 (5th Cir. 1995) (quoting *Marathon Mfg. Co. v. Enerlite Prods. Corp.*, 767 F.2d 214, 217 (5th Cir. 1985)). Whether the challenged mark is likely to cause confusion "is a question of fact" and is one that ordinarily "assail[s]" the conclusion that summary judgment is the appropriate vehicle for disposition. *Id.* Nevertheless, although the "likelihood of confusion is typically a question of fact, summary judgment is proper if the 'record *compels* the conclusion that the movant is entitled to judgment as a matter of law.'" *Xtreme Lashes*, 576 F.3d at 227 (emphasis added) (quoting *Bd. of Supervisors*, 550 F.3d at 474).

"To evaluate whether there is a likelihood of confusion, we use a non-exhaustive list of factors known as the 'digits of confusion.'" *Rex Real Est. I,*

4

*L.P. v. Rex Real Est. Exch., Inc.*, 80 F.4th 607, 620 (5th Cir. 2023) (quoting *Xtreme Lashes*, 576 F.3d at 227). The digits are: "(1) the type of trademark; (2) mark similarity; (3) product similarity; (4) outlet and purchaser identity; (5) advertising media identity; (6) defendant's intent; (7) actual confusion; and (8) care exercised by potential purchasers." *Id.* (quoting *Xtreme Lashes*, 576 F.3d at 227). No single digit is dispositive of the determination that there is a likelihood of confusion, "and the digits may weigh differently from case to case, 'depending on the particular facts and circumstances involved.'" *Xtreme Lashes*, 576 F.3d at 227 (quoting *Marathon*, 767 F.2d at 218). In assessing each digit, "[t]he court should consider all relevant evidence." *Id.* "In addition to the digits of confusion, the particular context in which the mark appears must receive special emphasis." *Rex Real Est.*, 80 F.4th at 620 (quoting *Scott Fetzer Co. v. House of Vacuums, Inc.*, 381 F.3d 477, 486 (5th Cir. 2004)). This is because, as we have explained, "[p]rominent and pervasive use of a mark will suggest affiliation, but mere reference to a mark[] . . . will not." *Scott Fetzer Co.*, 381 F.3d at 485.

## III. Analysis

The district court examined each digit and relied on the following findings in concluding that, as a matter of law, LEYE could not establish a likelihood of confusion:

> Three factors compel the Court to grant summary judgment: (1) "Summer House" is a commercially weak mark with widespread third-party use, (2) there is no evidence of consumer overlap, and (3) there is *de minimis* evidence of actual confusion. In light of these factors, a reasonable jury could not find a likelihood of confusion. Accordingly, [Hotel M] is entitled to summary judgment.

In reaching these conclusions, however, the district court misapplied the summary judgment standard by failing to view the evidence in the light most

No. 23-50319

favorable to LEYE. In so doing, it disregarded digits in favor of LEYE, which led to the erroneous conclusion that the record "compelled" the conclusion that Hotel M was entitled to judgment as a matter of law. We address each digit in turn.

## A. Type of Trademark

"'Type of trademark' refers to the strength of the senior mark." *Rex Real Estate*, 80 F.4th at 621 (quoting *Xtreme Lashes*, 576 F.3d at 227). "The more distinct and recognizable the senior user's mark, 'the greater the likelihood that consumers will confuse the junior user's use with that of the senior user.'" *Springboards to Educ., Inc. v. Hous. Indep. School Dist.*, 912 F.3d 805, 814 (5th Cir. 2019) (quoting *Elvis Presley Enters., Inc. v. Capece*, 141 F.3d 188, 201 (5th Cir. 1998)). Two considerations are evaluated under this digit: "the mark's position along the distinctiveness spectrum, and (2) 'the standing of the mark in the marketplace.'" *Id.* (quoting *Am. Rice, Inc. v. Producers Rice Mill, Inc.*, 518 F.3d 321, 330 (5th Cir. 2008)). Marks that are registered with the PTO enjoy a presumption of conceptual strength. *See All. for Good Gov. v. Coal. for Better Gov.*, 901 F.3d 498, 510 (5th Cir. 2018) (holding that the senior mark "enjoys an unrebutted presumption of distinctiveness due to its PTO registration").

The second consideration, the standing of the mark in the marketplace, is typically shown by the duration of a trademark's use, promotion of the mark, and consumer recognition of the mark. *See, e.g.*, *Bd. of Supervisors*, 550 F.3d at 479 (duration of use); *All. for Good Gov.*, 901 F.3d at 510 (promotional efforts); *Springboards to Educ.*, 912 F.3d at 815 (consumer recognition). Pervasive third-party use can undercut the strength of a mark. *See Springboards to Educ.*, 912 F.3d at 815 ("Extensive third-party use of a term throughout the market suggests that consumers will not associate the junior mark's use with the senior mark user.").

Here, the district court concluded that LEYE's "Summer House Santa Monica" mark was both conceptually and commercially weak. As for conceptual strength, we decline to say "with certitude" that the district court erred in concluding that LEYE's trademark displayed only "mild conceptual strength." *Xtreme Lashes*, 576 F.3d at 228 ("We cannot say with certitude that XTREME LASHES is strong or weak. For summary judgment purposes, the mark is entitled to protection."). But we do conclude that the district court twice misapplied the summary judgment standard when it evaluated this digit. First, it failed to view the facts in the light most favorable to LEYE when it found "that a reasonable jury could find the mark anywhere from descriptive to arbitrary, but would most likely find the mark suggestive because it alludes to the theme and cuisine of the restaurant through exercise of the imagination." Second, the district erred in finding that the trademark's conceptual strength was "overshadowed by its commercial weakness" because of "widespread" third-party use of the "Summer House" moniker. This is because the district court determined that the seven instances of third-party use diminished the commercial standing of LEYE's mark, but did so without investigating the nature and extent of the third-party usage. *See Streamline Prod. Sys., Inc. v. Streamline Mfg., Inc.*, 851 F.3d 440, 454 (5th Cir. 2017) (concluding that third-party use of the mark did not weaken the mark's strength in part because "no evidence was introduced at trial on the nature and extent of" the third-party use). In so concluding, the district court failed to view the evidence in the light most favorable to LEYE, the nonmovant.

## B. Mark Similarity

The second digit, mark similarity, "is determined by comparing the marks' appearance, sound, and meaning." *Xtreme Lashes*, 576 F.3d at 228 (quoting *Capece*, 141 F.3d at 201). "Similarity of appearance is determined on the basis of the total effect of the designation, rather than on a comparison of individual features." *Id.* (quoting *Amstar Corp. v. Domino's Pizza, Inc.*, 615

F.2d 252, 260-61 (5th Cir. 1980)). However, courts closely analyze "the dominant features of a mark." *Id.* "Even if two marks are distinguishable, we ask whether, under the circumstances of use, the marks are similar enough that a reasonable person could believe the two products have a common origin or association." *Id.* "To determine the 'meaning and connotation' of the marks, we consider the context of use, such as labels, packaging, and advertising." *Id.* (quoting *Capece*, 141 F.3d at 201).

Here, the district court compared the individual features of the respective marks—such as font, color, etc.—and concluded that this digit weighed against LEYE because "nearly every design element appears to be different between the two marks." But in *Xtreme Lashes*, we rejected that approach, stating that "[a] focus on the marks' distinguishable visual features, when viewed 'side by side in the judicial solemnity of the courtroom is by itself enough of a falsification of actual market conditions to defy realistic appraisal.'" 576 F.3d at 228 (quoting *Sun-Fun Prods., Inc. v. Suntan Rsch. & Dev., Inc.*, 656 F.2d 186, 189 (5th Cir. 1981)). On this basis alone, the district court erred in its appraisal of this digit. Moreover, both marks have the same dominant feature: "Summer House". *See id.* at 228. The district court thus erred in weighing this digit against LEYE. *See id.* at 228-29 (holding that, when "[t]aking all inferences in favor of Xtreme," the marks were "similar enough to suggest a common origin or association" when they shared "a large stylized 'X' as a prominent feature").

## C. Product Similarity

"The greater the similarity between the products and services, the greater the likelihood of confusion." *Xtreme Lashes*, 576 F.3d at 229 (quoting *Exxon Corp. v. Tex. Motor Exch. of Hous., Inc.*, 628 F.2d 500, 505 (5th Cir. 1980)). After reviewing the evidence, the district court properly concluded that "[b]oth [restaurants] are American-style restaurants that provide

upscale, sit-down service to patrons." The district court thus correctly weighed this digit in favor of LEYE.

### D. Outlet and Purchaser Identity

"The greater the overlap between the outlets for, and consumers of, the services, the greater the potential for confusion." *Alliance for Good Gov.*, 901 F.3d at 512; *cf. Exxon*, 628 F.2d at 505 ("Dissimilarities between the retail outlets for and the predominant consumers of plaintiff's and defendant's goods lessen the possibility of confusion, mistake, or deception.") (quoting *Amstar*, 615 F.2d at 262)). Here, the district court determined that "[c]onsumer identity weighs strongly in favor of [Hotel M]." But, in so doing, the district court failed to acknowledge that both LEYE and Hotel M cater to travelers and tourists: LEYE operates Summer House Santa Monica restaurants in international airports and the Summer House on Music Lane restaurant is the in-house restaurant for Hotel M. Neither did the district court credit the similarities between LEYE's and Hotel M's locations, *i.e.*, at places frequented by travelers. At the summary judgment stage, with LEYE as the nonmovant, those facts should have "support[ed] the inference that [Hotel M] and [LEYE] compete directly for end-users" in the upscale American dining market. *Xtreme Lashes*, 576 F.3d at 229. Instead, the district court weighed those facts in the light most favorable to Hotel M, the movant, and thus misapplied the summary judgment standard.[1]

---

[1] We take no issue with the district court's observation that LEYE's evidence of consumer overlap was lacking. But this digit requires the court to analyze both the overlap of consumers *and* outlets. We simply conclude that here, on summary judgment, some weight in LEYE's favor should have been awarded on this digit, given the similarities between the parties' outlets.

### E. Advertising Media Identity

The fifth digit concerns whether the parties employ "many of the same advertising and promotional techniques." *Sun-Fun*, *Prods.*, 656 F.2d at 191. "Here, a court looks for advertising in similar media as an indication that consumers might be confused as to the source of similar products." *Am. Rice*, 518 F.3d at 332. The district court concluded that, "[b]ecause there is no evidence that these advertising channels overlap geographically, this factor is neutral." Such a conclusion confuses the court's typical role here, which is to identify whether the parties advertise in the same or similar marketing channels. And, in any case, the district court ignored evidence showing that both LEYE and Hotel M advertise in *national* magazines—not to mention that they both market via social media, web-based ads, and email campaigns. The district court's failure to make an inference in LEYE's favor based on this record was also a misapplication of the summary judgment standard. *See Xtreme Lashes*, 576 F.3d at 229 ("Both companies use print advertisements, direct mailings, and Internet promotion . . . . This supports an inference that the parties use similar advertising and marketing channels.").

### F. Hotel M's Intent

The sixth digit entails an examination of whether the defendant intended to confuse the public with its use of the mark. "Our intent inquiry focuses on whether the defendant intended to derive benefits from the reputation of the plaintiff." *Streamline Prod.*, 851 F.3d at 455. "We have . . . found intent to confuse when the defendant did not choose the mark with intent to confuse but subsequently used the mark in a way that 'evidenced an intent to trade on the senior user's reputation.'" *Id.* at 456 (alteration omitted) (quoting *Westchester Media v. PRL USA Holdings, Inc.*, 214 F.3d 658, 666 (5th Cir. 2000)).

The district court weighed this factor neutrally and held that, although Hotel M was aware of LEYE's trademark, LEYE did not show that Hotel M had "any intent to derive a benefit" from the use of the mark. The record somewhat belies this interpretation of the evidence, as there is some evidence indicating that Hotel M used promotional items that omit the "Music Lane" moniker entirely after previously being made aware of LEYE's trademark. In so concluding, the district court again failed to view the evidence in the light most favorable to LEYE, and—in any case—we believe that this factual dispute should be resolved by a jury.

## G. Actual Confusion

The seventh digit evaluates whether Hotel M's use of "Summer House on Music Lane" actually confused consumers into thinking that Summer House on Music Lane and the Summer House Santa Monica restaurants share a common origin. Evidence of actual confusion can be demonstrated through "anecdotal instances of consumer confusion, systematic consumer surveys, or both." *Id.* "Testimony of a single known incident of actual confusion by a consumer has been found to be sufficient evidence to support the district court's finding of actual confusion." *Id.* at 457 (citing *La. World Exposition v. Logue*, 746 F.2d 1033, 1041 (5th Cir. 1984)). However, evidence of actual confusion must demonstrate that "[t]he confusion was caused by the trademarks employed and it swayed consumer purchases." *Id.* (quoting *Xtreme Lashes*, 576 F.3d at 230). We agree with the district court that LEYE presented very little evidence of actual confusion. We disagree, however, with the district court's balancing of this digit. The district court observed that, given the dearth of digits weighing in favor of LEYE, it "should have provided some evidence of actual confusion" to survive summary judgment. In other circumstances, this might have been a reasonable conclusion, but the weight afforded to this digit by the district court was precipitated by its misapplication of the summary judgment

No. 23-50319

standard to several of the other digits. When we properly weigh the other digits, we do not find LEYE's minimal evidence of actual confusion to be dispositive of the likelihood-of-confusion inquiry at the summary judgment stage.

### H. Care Exercised by Potential Purchasers

The final digit evaluates the probability of confusion through a consideration of the price of the product or service. "Where items are relatively inexpensive, a buyer may take less care in selecting the item, thereby increasing the risk of confusion." *Xtreme Lashes*, 576 F.3d at 231 (quoting *Smack Apparel*, 550 F.3d at 483). Given the somewhat conflicting evidence of the relative expensiveness of the parties' offerings, we take no position on how the district court weighed this digit, but we note that this fact issue likely should have been resolved by a jury.

## IV. Conclusion

As outlined above, the district court failed to consider all facts and the inferences deduced therefrom in the light most favorable to LEYE. This was a misapplication of the summary judgment, and we find vacatur with a remand for the district court to reweigh the digits in the first instance to be appropriate. Thus, the judgment of the district court is VACATED, and the matter is REMANDED for further proceedings in accordance with this opinion.[2]

-----

[2] Judge Haynes dissents. She would affirm on the grounds determined by the district court.